*B. F. Butler*, for the plaintiff.

*H. C. Hutchins*, for the defendants.

---

WILLIAM A. RICHARDSON & another *vs.* STEPHEN WYMAN.

Under *St.* 1838, *c.* 163, § 3, a creditor holding a mortgage of land from three tenants in common to secure their joint and several note may, under proceedings in insolvency against one of them, have an undivided third part of the land sold, and after deducting the amount received therefor, and the value of the remaining two third parts, as ascertained by an assessor or in some other proper manner, but not by reference to the amount obtained for the part so sold, prove the residue of his debt, if any.

PETITION in equity, under *St.* 1838, *c.* 163, § 18, by the assignees of Supply C. Wilson, an insolvent debtor, to annul or revise an order of a commissioner of insolvency, passed on the application of the respondent, who held a joint and several note signed by the debtor and two others, secured by a mortgage of land owned by the three as tenants in common; which order was passed against the objection of the assignees, and without notice to the other mortgagors; and was that the assignees should cause an undivided third part of the land to be sold by public auction, and pay over to said creditor the net proceeds of the sale, and that the creditor, after deducting the amount of such proceeds, and after deducting, as the value of the two third parts remaining unsold, and still held by him, twice the

amount so received, be allowed to prove the balance against the estate of the insolvent.

*D. S. Richardson*, for the petitioners.

*J. G. Abbott*, for the respondent.

This case was decided at October term 1856.

MERRICK, J. The object of the petitioners in seeking the intervention of this court is to prevent Stephen Wyman from proving any part of the debt due to him from Wilson against his estate in their hands, until he shall have either sold and applied towards its payment the whole of the property held by him as collateral security, or shall have surrendered and delivered it up to them.

There is no doubt but that Wyman must be restricted in the proof of his claim against the estate of Wilson to such balance only as shall appear to be due to him after the whole value of the property which he holds as collateral security shall have been deducted from it. The order of the commissioner of insolvency was obviously intended to produce this effect.

But the petitioners object to the validity of this order, on the ground that it required only a sale of a part of the security, and suffered the remainder to be retained by the creditor. They insist that, before he can legally be allowed to prove his claim or any part of it, one of two things must have occurred; that the whole of the collateral security must be sold; or the whole of it be surrendered and delivered up to the assignees. But this objection is predicated upon an erroneous construction of the provisions of the statute. The words of the statute are, that " when any creditor shall have any mortgage or pledge of any real or personal estate of the debtor, for securing the payment of any debt claimed by him, the property so held as security shall, if he require it, be sold, and the proceeds applied towards the payment of his debt," or he may " release and deliver up to the assignees the premises so held as security," and thereupon he shall be admitted as a creditor, in the one case for the whole, and in the other for the residue of the debt. *St.* 1838, *c.* 163, § 3.

This provision requiring the sale or surrender of the property of the debtor, which is held in mortgage, is applicable only to

the property of the insolvent debtor. This will be apparent from two considerations. In the first place neither the creditor, the assignees, nor the commissioner of insolvency can have any authority, power, or right to sell or dispose of property belonging to other persons. The latter are not parties to the proceedings against the insolvent or against his estate ; and as strangers to these proceedings they cannot be bound or affected in relation to their own estates, by any decree or adjudication which may be made concerning the estate of the insolvent or the insolvent himself. Nor, in the second place, can the creditor who holds, as in this case, the several property of the insolvent and of other debtors as security for their joint debt, surrender and deliver up to the assignees the whole property mortgaged, and still have and retain any debt due to himself. He may surrender the property of the insolvent, which is in pledge, and still retain the debt ; but the only way in which he could surrender and deliver up to the assignees the property or his interest in the property of the other debtors, would be by assigning to them his note and mortgage. And he would thus have no debt left to prove against the insolvent. This leads to an evident absurdity, which is not required by a true construction of the provisions of the statute. Under these provisions, the property of the insolvent debtor is to be sold under the order of the commissioner of insolvency upon the application of the creditor, or be surrendered by him to the assignees ; and the value of the remaining property which is mortgaged or pledged to him by other parties as security for the payment of a joint or common debt, is to be allowed before any part of it can be proved against the estate of the insolvent.

It is true that the statute makes no special provision for a particular case like this, where there is a joint debt secured by real estate owned in common by the insolvent and the other debtors. But it is, as was said in the case of *Lanckton* v. *Wolcott*, 6 Met. 307, within the spirit, if not within the letter, of the insolvent act. The property of the insolvent debtor, which is pledged for the payment of the debt, should either be applied to its extinguishment, or surrendered to the assignees and made part

of the estate to be distributed among the general creditors ; and whatever other property the creditor holds as security ought also to be appropriated to the payment of the debt. This is an equitable rule which will do justice to all parties. It has the sanction, in its spirit, of the courts of chancery in England, and has been recognized and enforced in our own. *Lanckton* v. *Wolcott,* 6 Met. 305. *Amory* v. *Francis,* 16 Mass. 308.

Though there is no particular mode prescribed for ascertaining the value of the property mortgaged belonging to any other than the insolvent debtor, this creates no obstacle in the administration of the law. The commissioner of insolvency is authorized to allow proof of debts, and to order a final distribution among the creditors of the effects of this insolvent. This brings within his jurisdiction all the means which are absolutely indispensable to reach the object to be accomplished. He may therefore direct the manner in which the value of the estate mortgaged by other than the insolvent debtor as security for their joint debt shall be ascertained. He may send the question to an assessor. And we think this a convenient and proper mode of deriving the necessary information. On the return and acceptance of the report of the assessor, the commissioner of insolvency may order the value of the property held as security thus ascertained to be deducted from the debt, and may then permit it to be proved against the estate of the insolvent for the balance remaining due to the creditor. There are, we think, substantial objections to making the sale of an undivided third part of mortgaged real estate a conclusive standard of the value of the remaining two thirds. It is properly evidence, but ought not to be considered conclusive proof of the value. Circumstances may have attended the sale which prevented the obtaining of a fair price for the property sold. The order of the commissioner, therefore, in this case, having been founded wholly upon the proceeds of the sale of the undivided third part of the insolvent, ought to be revised and amended. Instead of adopting this sale as the standard of value, the question should be sent, as before suggested, to an assessor for investigation. In all other respects the order is affirmed. *Decree accordingly.*