In the Matter of the Assignment of W. W. Doolittle, J. L. Carney, Assignee, v. Nellie T. Smith, Claimant, Appellant.

**Assignment: SECURED CLAIMS:** *Insolvency.* Where a claim against an assigned estate is paid in part after it is filed, out of the proceeds of collaterals held by the claimant, the claim will be reduced to the extent of the payment, for the purpose of final distribution, though no objections are made to the claim as filed, distinguishing *People v Remington*, 121 N. Y. 328; citing *Armory v. Francis*, 16 Mass. 308; *Bank v. Lanahan*, 66 Md. 461.

*Appeal from Marshall District Court.*—Hon. G. W. Burnham, Judge.

Friday, January 21, 189~~ᵒ~~

In June, 1895, W. W. Doolittle made an assignment for the benefit of his creditors with J. L. Carney, as assignee. Nellie T. Smith filed her claim for five thousand dollars, September 18, 1895, to which no objections were filed. In October, 1895, the assignee filed his report in the district court, giving the names of creditors and the several amounts, and among them that of Nellie T. Smith, for five thousand dollars. Prior to the assignment, Nellie T. Smith held, as collateral security for her debt, certain corporation stocks, on which she realized three thousand and forty-eight dollars and thirty-eight cents. This was in January, 1896. In August, 1896, the assignee filed his final report, showing a balance for distribution among creditors of eight hundred and sixteen dollars and thirty-three cents, and asked an order for such distribution on the claims filed with him, "without including interest, paying an equal *pro rata* on the principal of the same, still unpaid." Nellie T. Smith filed exceptions to the report, on the ground that it proposed a distribution to her on the basis of her unpaid claim after deducting the three thousand and forty-eight dollars and thirty-eight cents, instead of on the basis of the claim of five thousand dollars, as filed. The district court approved the report, and ordered distribution accordingly, and Nellie T. Smith appealed.— *Affirmed.*

*Binford & Snelling* for appellant.

*J. M. Holt* and *J. L. Carney* for appellee.

GRANGER, J.—The single question before us is: Where a claim for which collaterals are held as security is filed, in an assignment proceeding, and where the claim is afterwards partly paid from the collaterals, is the claim, because of the payment, to be reduced to that extent, for the purpose of a final distribution of the

assets in the hands of the assignees, or is such distribution to be made on the basis of the claim is filed, where no objcetions to it are made? It should be conceded that, as no exceptions were filed to the claim of appellant, it stood established, by operation of law, for the amount claimed; so that without the payment in question, because of the collaterals, the distribution would be on the basis of the full claim. Such a rule is not questioned, and its statement accords with appellant's claim. It is a fact that the time for filing exceptions to claims expired before the application of the proceeds from the collaterals. In view of such fact, it is appellant's claim that, "immediately at the expiration of the time for filing exceptions to claims, if none be filed, each claim is established and proved, and each claimant has a vested interest in the property assigned in proportion to the amount of his claim, and from that date the amount of his equitable interest in the property assigned is certain and fixed." Appellant's argument in support of the proposition is that, when the five thousand dollar-claim became established for want of exceptions to it, she had a vested interest in the property assigned, and also in the property pledged as security, so that she had two securities for the debt. By combining parts of two sections from Jones, Pledges, 590, 591, appellant presents and invokes the following rule in support of her claim: "In short, in the case of a pledge, just as in the case of a mortgage, the creditor may use any remedy he has against the debtor or his property for the collection of the principal debt, without destroying or impairing his security for the debt, until it is actually paid. A creditor is entitled to hold his securities, whatever they may be, until he gets his pay. The securities belong to him, and he may enforce the debt without surrendering them.   *   *   *   It is of the very nature of collateral security that it may be resorted to for a satisfaction of

the principal debt if its payments shall not be otherwise obtained." The language is used by the author in support of the following rules: "The holding of collateral security for a debt does not impair or suspend the right of action upon it, unless so agreed upon by the parties, whether the collateral be given at the time the debt was contracted or afterwards." "The recovery of a judgment upon a principal debt does not affect the pledgee's right to hold and enforce a pledge taken to secure that debt." We refer to these rules to show the connection in which the language was used, and thus be better able to know of its application to the question we are considering. The rules stated are, so far as we know, nowhere doubted. There is no attempt to deprive appellant of the right to hold her collaterals and maintain an independent action for the debt, or to deny to her a right to use the collaterals after obtaining a judgment on the debt. The rules seem to us to be foreign to the question presented in this case, and it is not to be correctly said that the author used the language cited except in the elucidation of his propositions. The following is a part of section 2122 of the Code of 1873: "If no exception be made to the claim of any creditor, or if the same have been adjudicated, the court shall order the assignee to make, from time to time, fair and equal dividends among the creditors of the assets in his hands, in proportion to their claims." It will be seen that the controversy is to be determined on what is meant by the use of the word "claims."

Appellant cites and quotes extensively from *People v. E. Remington & Sons*, 121 N. Y. 328 (24 N. E. Rep. 793). It was a case of the state against an insolvent bank for its dissolution, and a creditor bank, holding collaterals as security, presented and sought to prove up its claim for the full amount; and the question was made if the bank should not deduct from its claim what had already been realized on the securities and the value

of the securities still held. The reasoning of the opinion commences with these words: "There are conflicting decisions upon this question in the courts of the United States; and in England, if we look back upon the current of opinions, we may find some differences in views. But the preponderance of authority is in favor of the view that the creditor has the right to prove and have his dividends upon his entire debt, irrespective of the collateral security." The case declines, as a controlling one, the following equitable rule from Judge Story's Equity Jurisprudence (section 638): That where the creditor has two funds of his debtor, to which he can resort for payment, and another creditor has a lien only on one fund, equity will compel a resort by the first creditor to that fund to which the lien of the other does not extend, on the ground that the rule is based on a reason that, by its application, no injustice is done to the first creditor in point of security or payment, and that its application in that case would have that effect. It seems that the rule in bankruptcy cases is that the creditor can only prove up after realizing upon or valuing his securities. The case distinguishes that rule because of the provisions of the bankrupt law. In reaching a conclusion, it gives effect to the general rule that a creditor is not bound to apply his collateral securities before enforcing his direct remedies against the debtor. In *Amory v. Francis*, 16 Mass. 308, the court had under consideration the rights of a creditor against the estate of an insolvent debtor, under a statute requiring an equal *pro rata* distribution where the creditor had security; and the syllabus is as follows: "If a creditor to an insolvent estate have a mortgage, as security for his debt, he can claim from the commissioners only for the difference between his debt and the value of the property mortgaged." The case likens the rule to that obtaining in bankruptcy proceedings, and

it is said in the opinion: "The practice in cases of bankruptcy is not the effect of a statute provision, but the result of general principles of equity, which are equally applicable in cases of insolvency, like the present." *Bank v. Lanahan,* 66 Md. 461 (7 Atl. Rep. 615), is a case quite in point, and a syllabus is as follows: "Under an assignment for the benefit of creditors, the obligation of the trustee to pay a debt owing by the assignor does not depend on the state of the account between the creditor and the assignor at the time of the assignment, but at the time when payment is made." The case fully sustains the syllabus, and, on principle, we discover no distinguishing facts from the case at bar. The authorities on both sides are quite fully collected in 3 Am. & Eng. Enc. Law (2d ed.).

We have noticed these cases to show the different views entertained by courts as to the equitable considerations that control in such cases, and that there is no general rule of jurisprudence to be violated by our conclusion. It may be conceded that other courts have announced different views and conclusions on the same subject. We may say that if the estate of the insolvent, in the hands of the assignee, is to be treated as a security for all the creditors, as some of the cases treat it,— and it is appellant's theory also,—we see no way to escape the application of the general rule that where a creditor has security on two funds, and another creditor has it on but one of them, equity will require the first creditor to first exhaust his security not pledged to the other, so that both creditors may be protected. Treating the estate as property pledged by the law for the payment of all the creditors *pro rata,* it seems to us the relation of the appellant to the other creditors is exactly that of the one with security on two funds, on one of which the other creditors have security. In fact, it seems to us the rule has express recognition in this state, in *Wurtz v. Hart,* 13 Iowa, 515. It is thought by

appellant that the case is not in point, that case being in equity, and this a proceeding at law; that the *Wurtz Case* is by one creditor against another creditor, while in this case the question is raised by the assignee. An examination of that case will show that the question is directly involved whether, in assignment proceedings, a creditor with special security may be required to resort to such security, and can only claim a dividend upon the amount remaining unpaid after exhausting the property on which he has the special lien. The case answers the question in the affirmative, and, in the interest of precision, re-states the rule in this way: "Or this same rule may be stated thus: that, if a creditor has two funds out of which he may make his debt, he may be required to resort to that fund upon which another creditor has no lien." This is precisely in accord with what we have before stated in this case. The only doubtful feature of that case, as authority in this, is the difference in the proceedings; but the case states the equitable rule, and, by the general current of authority, the equitable rule obtains even where the question is presented in the assignment proceedings. See *Amory v. Francis, supra.* The *Wurtz Case* refers to *Dickson v. Chorn*, 6 Iowa, 19. So far as the character of the proceeding is concerned, it is to be said that, while the issues present the question fairly as to the rule applicable to such facts, no question was made, nor is one now, as to this being a proper proceeding in which to settle the rule. We, of course, determine no question broader than the one involved: That, because of the payment from the proceeds of the collateral security, the claim, as a basis for a dividend, was reduced to the extent of the payment. The judgment is AFFIRMED.